IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GREGORY F. ABBOTT,

        Plaintiff,

vs.                              Case No. 10-4027-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On November 18, 2009 administrative law judge (ALJ) William G. Horne issued his decision (R. at 9-18). Plaintiff alleges that he has been disabled since December 1, 2004 (R. at 9). Plaintiff is insured for disability insurance benefits through December 31, 2004 (R. at 9, 11). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 11). At step two, the ALJ found that plaintiff had the following severe

impairments: chronic back pain secondary to degenerative disc disease (DDD) of the lumbar spine with radiculopathy, and asthma/chronic obstructive pulmonary disease (R. at 11). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13). After determining plaintiff's RFC (R. at 13-14), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 17). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 17-18). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 18).

**III. Did the ALJ err in his consideration of the opinion of Dr. Wills that plaintiff's impairment meets listed impairment 1.04B?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's

5

reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be

weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Treating source opinions on issues that are reserved to the Commissioner[1] should be carefully considered and must never be ignored, but they are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the

---

[1] Issues reserved to the Commissioner include: (1) whether an claimant's impairment meets or is equivalent in severity to a listed impairment, (2) a claimant's RFC, (3) whether a claimant can perform past relevant work, and (4) whether a claimant is disabled. SSR 96-5p, 1996 WL 374183 at *2 (emphasis added).

7

Commissioner's statutory responsibility to determine whether an individual is disabled.  SSR 96-5p, 1996 WL 374183 at *2-3.

At step three, plaintiff has the burden of demonstrating, through medical evidence, that his/her impairments meet all of the specified medical criteria contained in a particular listing. Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001).  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990).  Because the listed impairments, if met, operate to cut off further inquiry, they should not be read expansively.  Caviness v. Apfel, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998).

The criteria for listed impairment 1.04 is as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> ........
>
> B. Spinal arachnoiditis, **confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging**, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours... .

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010 at 458, emphasis added).  The regulations further indicate that:

8

> 1.00(J)(2)(b): *Documentation.* Although the cause of spinal arachnoiditis is not always clear, it may be associated with chronic compression or irritation of the nerve roots...**Diagnosis [of spinal arachnoiditis] must be confirmed at the time of surgery by gross description, microscopic examination of biopsied tissue, or by findings on appropriate medically acceptable imaging. Arachnoiditis is sometimes used as a diagnosis when such a diagnosis is unsupported by clinical or laboratory findings. Therefore, care must be taken to ensure that the diagnosis is documented as described in 1.04B**.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010 at 456-457, emphasis added).

On a form signed by Dr. Wills on October 6, 2009, he indicated that plaintiff's condition met the spinal arachnoiditis criteria as stated in listed impairment 1.04B as set forth on the form (R. at 401). The ALJ gave no weight to this opinion by Dr. Wills, explaining as follows:

> The claimant's representative asserted during the hearing that the claimant's back disorder meets the criteria of Listing l.04B based on a form submitted by neurologist Matthew J. Wills, M.D. on October 6, 2009 (Exhibit 17F). This form was provided to Dr. Wills by the claimant's representative, Mr. Rutschmann. This form quotes the provisions of Listing l.04B and then poses the following question to Dr. Wills: "Does Mr. Abbott's condition meet Spinal arachnoidititis criteria stated at l.04B as written just above?" Dr. Wills checked the line marked for "Yes." **Dr. Wills did not state the basis for his opinion that the claimant's condition met the criteria of Listing l.04B and did not indicate the date when he felt the claimant first met this**

9

> **criteria**. According to the medical records in
> evidence, the claimant first saw Dr. Wills on
> April 22, 2008 on referral from his primary
> care physician (PCP), John H. Barnard, M.D.
> (Exhibit 18F, pp. 42-46). The claimant has
> only been seen by Dr. Wills on the following
> three other occasions since then: on July 31,
> 2008 for a pre-operative visit regarding the
> surgical implantation of a dorsal column
> stimulator (DCS) (Exhibit 18F, p. 33); on
> September 24, 2008 for the actual outpatient
> procedure for the DCS implantation (Exhibit
> 18F, p. 27); and a follow up visit on
> October 6, 2008 to remove the staples from
> the DCS implantation procedure (Exhibit 18F,
> p. 24). On January 21, 2009, the claimant's
> wife went to Dr. Wills' office to request
> that Dr. Wills sign a statement that the
> claimant was unable to work in order to
> obtain temporary assistance benefits
> from the Kansas Department of Social and
> Rehabilitation Services (SRS) (Exhibit 18F,
> p. 14). Dr. Wills refused to sign any such
> statement and instructed his nurse to tell
> the claimant's wife that she needed to
> contact the claimant's PCP (Dr. Barnard) for
> this matter because "the patient is no longer
> being followed in this office." This note
> documents that as of the time Dr. Wills
> submitted his form to Mr. Rutschmann on
> October 6, 2009, Dr. Wills had not seen the
> claimant in a year and had not had a treating
> relationship with the claimant since October
> 6, 2008. As of October 6, 2008, Dr. Wills had
> no plan to see the claimant in the future and
> has, in fact, not seen the claimant since
> then. Based on all the above, the undersigned
> gives no weight to Dr. Wills' opinion that
> the claimant's back condition meets the
> criteria of Listing l.04B.

(R. at 13, emphasis added).

According to the regulations, a finding of spinal arachnoiditis must be confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable

10

imaging. The form signed by Dr. Wills in which he indicated that plaintiff's impairment met listed impairment 1.04B also stated:

> Please provide a copy of the diagnostic assessment.

(R. at 401). A copy of the diagnostic assessment does not appear with the opinion of Dr. Wills. However, a letter from Dr. Wills, dated April 22, 2008, following his evaluation of the plaintiff, included the following:

> IMAGING STUDIES: I reviewed a lumbar MRI scan and some plain lumbar x-rays...There is no significant spinal stenosis. Notably in the spinal canal, there is some clumping of the nerve roots from about the L4 level down. This, to me, would be consistent with arachnoiditis.
>
> IMPRESSION:...Really the only anatomic abnormalilty I can find on his imaging study is a clumping of the nerve roots, suggesting scar tissue around the nerve roots, i.e., arachnoiditis. Although we do not have a clear etiology for him to develop this as he has had no prior surgery, he may have had some previous intracranial hemorrhage related to some of these concussions.

(R. at 444-445).

The ALJ, as set forth above, gave no weight to the opinion of Dr. Wills that plaintiff's impairment met listed impairment 1.04B, stating that Dr. Wills provided no basis for his opinion, and also failed to indicate the date when he felt that plaintiff first met this listed impairment (R. at 13).

First, an ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and

11

not due to his or her own credibility judgment, speculation or lay opinion. Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004); McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002). The ALJ does not cite to any medical evidence that disputes or questions the opinion of Dr. Wills that plaintiff's impairment meets the criteria of 1.04B.

Second, there is evidence in the record that the opinions of Dr. Wills were based on an MRI imaging study. Listed impairment 1.04B requires medical confirmation of a diagnosis of spinal arachnoiditis. One method of confirmation is by medically acceptable imaging. The April 22, 2008 letter by Dr. Wills referenced the MRI imaging study, and stated that the clumping of the nerve roots from the L4 level down was consistent with arachnoiditis, although he noted that they did not have a clear etiology for plaintiff to develop arachnoiditis because he had not had any prior surgery (R. at 444-445).

Third, the ALJ erred by failing to recontact Dr. Wills in order to obtain the basis for his opinion that listed impairment 1.04B was met in this case. In the case of Robinson v. Barnhart, 366 F.3d 1078 (10th Cir. 2004), the court held as follows:

> If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1) (**"We will seek additional**

> **evidence or clarification from your medical source when the report from your medical source** contains a conflict or ambiguity that must be resolved, the report **does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques**."); see also McGoffin, 288 F.3d at 1252 (holding ALJ had obligation to recontact treating physician if validity of his report open to question). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. White v. Barnhart, 287 F.3d 903, 908 (10th Cir.2001).

366 F.3d at 1084 (emphasis added). In addition, SSR 96-5p states the following:

> Because treating source evidence (including opinion evidence) is important, **if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion**.

1996 WL 374183 at *6 (emphasis added).

The ALJ stated that he gave no weight to the opinion of Dr. Wills because he "did not state the basis for his opinion" (R. at 13). SSR 96-5p specifically states that if the ALJ "cannot ascertain the basis of the opinion from the case record" the ALJ must make every reasonable effort to recontact the medical source in order to clarify the reasons given for the opinion. Similarly, 20 C.F.R. § 404.1512(e)(1) states that the ALJ "will"

13

seek additional evidence or clarification when the report from the medical source does not contain all the necessary information or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. The ALJ clearly failed to comply with SSR 96-5p and the regulations by failing to recontact Dr. Wills in order to ascertain either the basis for his opinion or whether his opinion contained all the necessary information, or to ascertain if his opinion was based on medically acceptable clinical and laboratory diagnostic techniques. This case shall therefore be remanded in order for the ALJ to recontact Dr. Wills as required by the agency's regulations and rulings.

**IV. Did the ALJ err in his credibility and RFC findings?**

Plaintiff argues that the ALJ erred in his analysis of plaintiff's credibility. Plaintiff also asserts that the ALJ erred in his RFC findings because they do not reflect the opinions of Dr. Wills and because of errors in the ALJ's credibility assessment. The court will not reach these remaining issues because they may be affected by the ALJ's resolution of the case on remand after recontacting Dr. Wills. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004). On remand, any RFC findings by the ALJ must comply with SSR 96-8p. According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The

14

ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 9th day of March 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge